UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LARRY CRAWFORD,<br>    *Plaintiff*,<br>    *v.*<br>NATIONAL RAILROAD PASSENGER<br>CORPORATION a/k/a AMTRAK,<br>    *Defendant*. | Civil No. 3:15-cv-131 (JBA)<br><br>December 17, 2015 |

**RULING DENYING MOTION FOR RECONSIDERATION**

Plaintiff Larry Crawford brought this action against his employer, National Railroad Passenger Corporation ("Amtrak"), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, retaliation in violation of Title VII of the Civil Rights Act of 1964, and intentional infliction of emotional distress. On December 4, 2015, this Court granted [Doc. # 43] Amtrak's motion to dismiss the Second Amended Complaint. Plaintiff now moves [Doc. # 45] for reconsideration of the Court's Order. For the following reasons, Plaintiff's motion is denied.

Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)1. The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.

1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

Plaintiff here seeks essentially to relitigate an issue already decided by the Court. Plaintiff contends that the Court erred in finding that he failed to allege facts from which it could reasonably be inferred that Amtrak knew or should have known about his claims that his co-workers were harassing him, other than Bruno. Specifically, he argues that the Court overlooked the fact that he met with his supervisor Frank Guadalupe and his manager Fred Fournier. Plaintiff asserts that from these facts, it could reasonably be inferred that Amtrak should have known about the hostile work environment alleged involving many other co-workers in addition to Bruno whose misconduct Amtrak was aware of.

These are, however, not facts overlooked by the Court. Indeed, Plaintiff highlighted them at oral argument in response to the Court's query about the basis for Plaintiff's assertion that he had pled that Amtrak knew or should have known about his other co-workers' harassment. The problem, as the Court observed at oral argument, with Plaintiff's claim that his conversations with Fournier and Guadalupe should have put Amtrak on notice of his hostile work environment claim is that Plaintiff's Complaint does not allege that Plaintiff told either individual about the other harassment.

With respect to the conversation with Fournier, the Complaint alleges only that "plaintiff met with . . . Fred Fournier . . . and . . . requested to be removed from any shift where he would have to work with Bruno" and Fournier "immediately denied his request." (2d Am. Compl. ¶ 23.) There is no suggestion that Plaintiff discussed with Fournier his allegations that other co-workers were harassing him or creating a hostile work environment.

With respect to the conversation with Guadalupe, the Complaint states: "[P]laintiff advised . . . Guadalupe[] that the *events with Bruno* had caused him severe stress and anxiety arising from both *the incident* itself and the horrendous manner the *investigation of the incident* was handled by the defendant. Plaintiff advised Guadalupe that he could not function at work as a result of the *discrimin[]atory and hostile actions caused by Bruno's racist behavior* and, more importantly, by *defendant's complete refusal to take any substantive actions against him.* Plaintiff told Guadalupe that the workplace environment had become so toxic and hostile toward him that he could not come to work and would need some time off to recuperate." (*Id.* ¶¶ 25–26 (emphasis added).)

Plaintiff's statement to Guadalupe that "the workplace environment had become . . . toxic and hostile toward him" contextually refers to Bruno's behavior and Amtrak's response to it, not to any actions by co-workers. Absent any specific claim of notice, it is not reasonable to infer that Amtrak knew or should have known that Plaintiff was experiencing racial harassment from his co-workers other than Bruno. As the Court concluded in its Ruling on the Motion to Dismiss, Plaintiff adequately alleged at least five incidents of harassment by co-workers which could have created a hostile work environment, but nowhere in his Complaint does Plaintiff make any allegation that any of these incidents were witnessed by management or that anyone, Plaintiff included, alerted management about them. Absent such allegations, Plaintiff's Complaint fails to "demonstrate that the harassing conduct which created the hostile situation should be imputed to the employer." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998) (internal quotation marks omitted).

Accordingly, Plaintiff's Motion [Doc. # 45] for Reconsideration is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of December, 2015.